***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which *Page 2 
the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Pre-trial Agreement, Plaintiff's medical records, and North Carolina Industrial Commission forms and filings;
 b. Plaintiff's Exhibit one (1) — Plaintiff's payroll records from 2005 through 2006;
 c. Plaintiff's Exhibit two (2) — Correspondence dated June 26, 2006 from Captain Joe Larkin Dixon to Plaintiff;
 d. Plaintiff's Exhibit three (3) — Correspondence dated July 21, 2006 from Captain Joe Larkin Dixon to Plaintiff;
 e. Plaintiff's Exhibit four (4) — Correspondence dated June 23, 2006 from Dr. William Marion McGough, Jr.;
 f. Plaintiff's Exhibit five (5) — Correspondence dated June 26, 2006 from counsel for Plaintiff to Captain Joe Larkin Dixon;
 g. Plaintiff's Exhibit six (6) — Correspondence dated July 5, 2006 from Dr. Lawrence John Fusco to Captain Joe Larkin Dixon;
 h. Defendants' Exhibit one (1) — Correspondence dated July 6, 2006 from Mr. Shonda Demetria Sims to counsel for Plaintiff;
 i. Defendants' Exhibit two (2) — Redacted memorandum dated July 27, 2007 from Lieutenant Ron E. Wolford to Captain Joe Larkin Dixon.
2. The parties are subject to and bound by the provisions of North Carolina Workers' *Page 3 
Compensation Act at all times relevant to these proceedings.
3. The University of North Carolina at Greensboro (hereinafter referred to as "Defendant") employed Plaintiff as a police officer at all times relevant to these proceedings.
4. Defendant was self-insured, with its claims being administered by Key Risk Management Services, at all times relevant to these proceedings.
5. Plaintiff's average weekly wage was $826.92 at all times relevant to these proceedings.
 *********** ISSUES
The issues for determination are:
1. Whether Plaintiff's neck condition is the result of a compensable injury by accident, and if so, to what compensation, if any, is she entitled?
2. Whether Plaintiff's claim is barred by the provisions of N.C. Gen. Stat. § 97-22?
 ***********
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Defendant employed Plaintiff as a campus police officer for approximately 14 years. Plaintiff attained the rank of sergeant, which is a supervisory position within Defendant's campus police department. Part of Plaintiff's job duties required her to undergo regular in-service and other special training concerning police procedures and techniques.
2. On July 21, 2005, Plaintiff was participating in Asp baton training, a special training session involving the use of a collapsible baton. Thirteen other officers, including *Page 4 
Plaintiff, as well as her supervisors, Major J. Herring and Captain Joe Larkin Dixon, participated in this special training session. Captain Dixon taught the special training session. According to documentation submitted to the North Carolina Industrial Commission, including Form 19's and medical records, three (3) of the 13 officers involved in this special training session sustained injuries, including a broken right finger, a laceration/abrasion to the left elbow, and a strained right calf muscle.
3. Plaintiff testified that during this special training course, her training partner threw her violently, and she landed awkwardly, injuring her neck. Plaintiff further testified that she informed Major Herring and Captain Dixon about her neck injury; however, neither Major Herring nor Captain Dixon recalled Plaintiff informing them about her alleged neck injury, and there was no written documentation memorializing Plaintiff's report of a neck injury to either Major Herring or Captain Dixon. Moreover, Lieutenant Ron E. Wolford interviewed all 13 participants in this special training session, and none of them recalled Plaintiff sustaining any type of injury.
4. Plaintiff testified that following her alleged July 21, 2005 work injury, she did not require immediate medical care. Plaintiff worked over the course of the next five (5) days following her alleged July 21, 2005 work injury. Plaintiff testified that during this five (5) day period, she began experiencing pain as the result of her alleged July 21, 2005 work injury.
5. On August 1, 2005, Plaintiff presented to Dr. Lawrence John Fusco, her primary care physician, with complaints of lower back pain. There is no reference in the medical records from this date to any work-related injury. Dr. Fusco ordered magnetic resonance imaging (MRI) of Plaintiff's thoracic and lumbar spine and ordered that Plaintiff remain out of work. The thoracic MRI revealed mild degenerative spondylotic changes, an incidental right-sided herniated *Page 5 
nucleus pulposus at the C5-C6 level of the spine, and mild disc protrusion at the T11-T12 level of the spine. The lumber MRI revealed mild stenotic changes and small disc protrusions at multiple levels of the lumbar spine, with facet hypertrophy mainly at the L4-L5 level of the spine, and to a lesser degree at the L3-L4 level of the spine. Upon reviewing these MRI results, Dr. Fusco ordered a neurosurgical consultation.
6. On September 14, 2005, Plaintiff presented to Dr. James Ronald Hirsch, a neurosurgeon, with complaints of upper back pain. Plaintiff did not have any complaints of neck or upper extremity pain. There is no reference in the medical records from this date to any work-related injury. On the intake form that Plaintiff completed, Plaintiff specifically indicated that she did not sustain a work-related injury, and that she was not filing a workers' compensation claim. Dr. Hirsch noted that Plaintiff had good range of motion in her neck, that her motor strength was intact in both the upper and lower extremities, that she was asymptomatic from her small disc herniation at the C5-C6 level of the spine, and that she did not exhibit any arm pain, numbness, or weakness. Dr. Hirsch diagnosed Plaintiff with a muscular strain. Following this appointment with Dr. Hirsch, Plaintiff returned to work with no restrictions.
7. Beginning on March 13, 2006, Plaintiff took a leave of absence from work pursuant to the federal Family Medical Leave Act, due to a diagnosis of depression and panic attacks related to marital and other family problems. On May 18, 2006, Lieutenant Wolford and Captain Dixon met with Plaintiff. At this time, Lieutenant Wolford and Captain Dixon advised Plaintiff that her leave under the federal Family Medical Leave Act would expire on June 12, 2006, and that she would need to report back to work on a full-duty basis on June 19, 2006.
8. Plaintiff did not report to work, as scheduled, on June 19, 2006. By facsimile dated June 26, 2006, Plaintiff provided Lieutenant Wolford and Captain *Page 6 
Dixon a note dated June 23, 2006 from Dr. William Marion McGough stating that Plaintiff was "unable to work due to her back and neck pain." By correspondence dated June 26, 2006, Captain Dixon advised Plaintiff that her sick and vacation leave benefits would be exhausted as of July 20, 2006, and that if she did not report to work by July 21, 2006, she may be terminated from her employment with Defendant. Plaintiff did not report for work on July 20, 2006. By correspondence dated July 21, 2006, Captain Dixon advised Plaintiff that effective that date, her employment with Defendant would be terminated.
9. During the course of Plaintiff's medical leave of absence beginning on March 13, 2006, she spoke with Lieutenant Wolford and Captain Dixon via telephone several times, and met with them in person on four (4) occasions concerning the status of her continuing need for medical leave. The Full Commission finds, based upon the greater weight of the evidence, that at no time during the course of these communications did Plaintiff mention anything concerning a work-related injury. The Full Commission further finds, based upon the greater weight of the evidence, that Plaintiff did not provide Defendant with any type of notification, either written or oral, regarding her alleged July 21, 2005 work injury until June 26, 2006, when counsel for Plaintiff faxed a Form 18 and letter of representation to Lieutenant Wolford and Captain Dixon.
10. Plaintiff returned to Dr. Hirsch on July 19, 2006, at which time she complained of neck pain, along with left arm pain and numbness. Dr. Hirsch diagnosed Plaintiff with spondylitic changes and herniated nucleus pulposus at the C5-C6 level of the spine, causing left-sided radiculopathy at the C6 level of the spine. As a result, Dr. Hirsch recommended that Plaintiff undergo an anterior cervical discectomy at the C5-C6 level of the spine. On July 27, 2006, Dr. Hirsch performed this anterior cervical discectomy at the C5-C6 level of the spine on Plaintiff.
11. Dr. Hirsch testified that Plaintiff had dramatically different complaints on July 19, *Page 7 
2006, when she complained of neck pain, along with left arm pain and numbness, as compared to her initial office visit of September 14, 2005, when she complained of mid-back and rib pain. Dr. Hirsch was unable to testify to any type of correlation between Plaintiff's cervical condition necessitating the surgery that he performed on July 27, 2006 and her alleged July 21, 2005 work injury. Moreover, Plaintiff did not mention her alleged July 21, 2005 work injury to Dr. Hirsch until August 21, 2006, at which time she included it on an intake form that she filled out during an appointment with Dr. Hirsch.
12. Plaintiff did not mention her alleged July 21, 2005 work injury to Dr. Fusco until April 30, 2007. On that date, Dr. Fusco noted that Plaintiff's neck complaints were recurrent since "8/05, Baton Training @ work." Based upon what Plaintiff relayed to Dr. Fusco on April 30, 2007, Dr. Fusco testified that her alleged July 21, 2005 work injury caused her cervical condition that necessitated the surgery that Dr. Hirsch performed on July 27, 2006.
13. The Full Commission finds, based upon the greater weight of the evidence, that the causation opinions of Dr. Hirsch regarding the relationship of Plaintiff's neck complaints to her alleged July 21, 2005 work injury should be given greater weight over the causation opinions of Dr. Fusco. Dr. Hirsch is a board-certified neurosurgeon, and he actually performed Plaintiff's cervical spine surgery, thereby providing him with more substantive knowledge upon which to formulate his medical causation opinions. Further, Dr. Fusco based his opinions on nothing more than a temporal relationship between the alleged July 21, 2005 work injury, for which he had to rely upon Plaintiff's uncorroborated version of the events of that day, and the neck complaints she made to him beginning in August 2005, along with the July 27, 2006 operative note from Dr. Hirsch.
14. The Full Commission finds, based upon the greater weight of the evidence, that *Page 8 
Plaintiff's testimony that she sustained an injury by accident on July 21, 2005 during the special training session should be given little weight. Plaintiff was unable to produce a single witness to corroborate that she suffered any type of injury during the July 21, 2005 special training session. Moreover, as a supervisor and a 13-year veteran of Defendant's campus police department, Plaintiff received training in both police and personnel-related reporting requirements, and either knew or should have known that her report of any work-related injury needed to be in writing, as soon as possible. Plaintiff made no attempts to provide any type of written notice to Defendant until almost one (1) year after the alleged July 21, 2005 work injury.
15. The Full Commission finds, based upon the greater weight of the evidence, that the testimony of Lieutenant Wolford and Captain Dixon should be given greater weight than that of Plaintiff concerning the events leading up to the alleged July 21, 2005 work injury. Defendant, through their agents Lieutenant Wolford and Captain Dixon, made the effort to perform extensive interviews of all of the participants in the July 21, 2005 special training session, and to document, in writing, the injuries sustained during the special training session by three (3) of the 13 participants. Further, Defendant filed Form 19's in order to acknowledge the existence of these workers' compensation claims, and sent these officers to receive medical treatment. Given all of these efforts on the part of Defendant and its agents to investigate and acknowledge the work-related injuries resulting from the July 21, 2005 special training session, it is both illogical and improbable to conclude that Defendant and its agents would intentionally refuse to acknowledge the existence of Plaintiff's alleged work injury, while acknowledging the existence of three (3) other work-related injuries occurring during the very same special training session.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff did not provide a reasonable excuse for the delay in providing written notice via the June 26, *Page 9 
2006 Form 18 of her alleged July 21, 2005 work injury to Defendant. Furthermore, assuming arguendo that Plaintiff provided a reasonable excuse, the 11 month delay in reporting the alleged July 21, 2005 work injury was severely prejudicial to Defendant in its efforts to investigate and otherwise act upon Plaintiff's claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with Defendant on July 21 2005. N.C. Gen. Stat. § 97-2(6) (2007).
2. Because Plaintiff failed to provide a reasonable excuse for the delay in providing written notice of her to alleged July 21, 2005 work injury, and because the 11 month delay in reporting the alleged work injury was severely prejudicial to Defendant in its efforts to investigate and otherwise act upon Plaintiff's claim, her claim would be barred pursuant to N.C. Gen. Stat. § 97-22 if she established an injury by accident. N.C. Gen. Stat. § 97-22 (2007).
3. Plaintiff is entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6);97-22 (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 10 
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This the __ day of January 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1